

**FILED**
July 19, 2024 01:11 PM
ST-2010-CV-00672
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **GO FAST CHARTERS, LLC,** | ) |
| | ) **CASE NO. ST-2010-CV-00672** |
| **Plaintiff,** | ) |
| | ) **ACTION FOR BREACH OF** |
| -vs- | ) **CONTRACT, NEGLIGENCE,** |
| | ) **TRESSPASS, NUISANCE** |
| **TEXACO CARIBBEAN, INC.,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) |

Cite as: 2024 VI Super 26U

## MEMORANDUM OPINION

¶1 **THIS MATTER** is before the Court on:

1. Plaintiff Go Fast Charters, LLC's Motion to Strike Kellerhals Ferguson Kroblin PLLC's Asserted Attorney's Lien, filed December 4, 2018;

2. Kellerhals Ferguson Kroblin PLLC's Reply to Opposition to Motion for Summary Judgment on Attorney's Lien & Opposition to Motion to Strike Attorney's Lien, filed December 28, 2018;

3. Plaintiff Go Fast Charters, LLC's Supplement Submission in Support of Plaintiff's Motion to Strike Kellerhals Ferguson Kroblin PLLC's Asserted Attorney's Lien, accepted by Order issued January 29, 2024;

4. Plaintiff Go Fast Charters, LLC'S Post-Hearing Proposed Findings Of Fact And Conclusions Of Law, filed June 17, 2024;

5. Plaintiff Go Fast Charters, LLC's Post-Hearing Brief In Support Of Plaintiff's Motion To Strike Kellerhals Ferguson Kroblin PLLC'S Asserted Attorney's Lien, filed June 17, 2024;

6. Kellerhals Ferguson Kroblin PLLC's Findings Of Fact & Conclusions Of Law, filed June 20, 2024; and

7. Kellerhals Ferguson Kroblin PLLC's Post-Hearing Closing Argument And Brief, filed June 20, 2024.

¶2 The Court finds that the contingency fee agreed to between the parties in this matter was dependent on damages being awarded at a jury trial. As there was no damages award, the charging

lien is no longer valid and Plaintiff Go Fast Charters, LLC's Motion to Strike Kellerhals Ferguson Kroblin PLLC's Asserted Attorney's Lien, filed December 4, 2018, will be granted.

## I. INTRODUCTION

¶3    On November 29, 2010, Plaintiff Go Fast Charters, LLC ("Go Fast") filed suit against Defendant Texaco Caribbean, Inc. ("Texaco") on account of oil/gasoline leakages from storage, distribution, and pumping equipment operated by Texaco at a marina run by Go Fast. Go Fast and Texaco eventually reached a settlement, and on July 10, 2017, the parties filed a Joint Stipulation and Motion To Dismiss, which was granted by this Court's Order on July 11, 2017. On April 19, 2018, Go Fast filed a motion to reopen the case for the limited purpose of adjudicating an attorney's lien, which was asserted on the settlement proceeds by Go Fast's former counsel, Kellerhals Ferguson Kroblin, PLLC ("KFK") on July 16, 2014.

¶4    On May 16, 2018, the case was reopened for the purpose of clarifying the attorney's lien placed by KFK. On September 19, 2022, the Court ordered the parties to provide briefs analyzing the common law right of an attorney's lien under the *Banks* analysis framework.[1] On October 24, 2022, both KFK and Go Fast filed briefs analyzing the common law right to an attorney's lien. On October 11, 2023, this Court issued a Memorandum Opinion, 2023 VI Super 58, establishing the common law right to an attorney's lien in the U.S. Virgin Islands. An evidentiary hearing was scheduled for, and subsequently held on, January 18, 2024, to resolve whether KFK was entitled to an attorney's lien. The parties then submitted their post-hearing briefings on June 17, 2024.

## II. FINDINGS OF FACT

¶5    The Court makes the following Findings of Fact following the evidentiary hearing and upon review of the post-hearing briefing:

1. Go Fast hired KFK in November 2012 to represent it in litigation pending at the Superior Court (the "Go Fast case"). The Go Fast case concerned leaking and spillage of oil/gasoline at a site which had been operated by Texaco.

2. KFK sent Go Fast an engagement letter on November 29, 2012, which outlined the scope of their attorney-client relationship and billing agreement ("2012 Agreement"). In the 2012 Agreement, Go Fast agreed to pay KFK on an hourly basis, as well as a 5% contingency fee. The 2012 Agreement stated: "if you are awarded damages in the case" then the firm is entitled to collect five percent (5%) "of any recovery."

3. At the time of KFK's engagement, KFK had an attorney who was a partner at the firm, Leigh Fletcher ("Attorney Fletcher"), who had expertise in environmental law. Attorney Fletcher prepared the engagement letter. Paul Sabers was the representative

---

[1] The Virgin Islands Supreme Court has stated that before conducting a *Banks* analysis, parties should be given a chance to brief the issue. *Malloy v. Reyes*, 61 V. 163, 176 (V.I. 2014) ("Here, the Superior Court erred in failing to give the parties an opportunity to brief the issue of abandonment of an easement under the *Banks* framework, and further erred by failing to conduct a *Banks* analysis at all.").

for Go Fast who signed the 2012 Agreement and communicated with KFK on behalf of Go Fast.

4. Sometime between 2013 and January 1, 2014, Attorney Fletcher left KFK.

5. KFK worked on the case from November 2012 to June 2014. Both Attorney Kellerhals and Attorney Christopher Allen Kroblin averred that the firm viewed the case as a business dispute and was ready to litigate it as such.

6. Go Fast fell behind on payments to KFK. Go Fast terminated its relationship with KFK in 2014 and retained new counsel: Attorney Jack Dema ("Attorney Dema"). KFK and Paul Sabers agreed to a one-time lump sum payment of thirty-five thousand dollars ($35,000) in return for a discount on the remaining balance of thirteen thousand two hundred ninety-seven dollars and seventy-two cents ($13,297.72) (the "2014 Agreement."). The email also stated which bank account to wire the funds to and by what date the funds were to be sent.

7. In the email establishing the 2014 Agreement, KFK additionally stated that "[a]s discussed previously, this discount is without prejudice to our previously agreed upon 5% lien on any recovery in the case, which we will still retain."

8. After the 2014 Agreement was made, KFK filed a Notice of Attorney's Lien on July 16, 2014.

9. Upon receiving the lien notice, Paul Sabers sent an email on July 16, 2014, stating: "Chris, I don't know why you felt this was necessary. Your firm has been paid in full for all legal expenses. I agreed that your firm was entitled to 5% in our original agreement with Leigh Fletcher. Your lien states your encumbering the entire award. I acknowledge your untitled [sic] to the 5% but that is the extent of your participation in any award or settlement I receive. I want this spelled out more clearly in your lien please."[2]

10. Attorney Dema approached the case from an environmental law perspective and re-opened discovery, retained new experts, briefed issues involving the statute of limitations, causation, the economic loss rule, implied-in-fact contract theory, the new business rule, and speculative damages.

11. Go Fast settled the case in 2017 before trial.[3]

12. Paul Sabers testified at the hearing. He stated that he negotiated the retainer agreement with Attorney Fletcher and that the reason he had retained KFK was because of her expertise in environmental law. When asked about the agreement he stated this about

---

[2] Plaintiff's Ex. G.

[3] The amount of money Texaco paid Go Fast is under seal.

the 5% lien: "That if I were awarded damages, I guess to a jury trial after the fact, that that would relate to the 5% based on awarded damages. And that was the agreement. It was never modified. That was our agreement. It was binding."

13. Paul Sabers also testified that the meaning of "without prejudice" was not explained to him and that he did not agree to any modification of the original agreement's contingent fee which he said was "based on damages awarded in a jury trial." He further testified that it was not his understanding that the emails would obligate him to pay five percent (5%) of any settlement amount. He further testified that as a businessman he would not trade a $13,297.72 discount for a $500,000 fee.

## III.   <u>CONCLUSIONS OF LAW</u>

¶6      Accordingly, the Court reaches the following Conclusions of Law following the evidentiary hearing and post-hearing briefings:

1. (1) Absent any statute or rule to the contrary of one or more elements of this right, which shall then control, (2) an attorney and client may arrange by express or implied written agreement that (3) the attorney shall have a lien for payment of costs and fees on the judgment, settlement, or other recovery of a client (4) in an amount not to exceed what is asserted in good faith and reasonable for work actually performed (5) and this lien takes effect at the commencement of the action. Further, the attorney must (6) file and provide notice to any third-party for the lien to be enforceable against that third-party and (7) may not unreasonably impede any dispute regarding those fees or the lien. Lastly, (8) the court or other tribunal in which judgment was received or, if settled, the case was commenced, may adjudicate any fee or lien dispute.[4]

2. Thus, to bring an action to recover fees via an attorney's charging lien the attorney must have: (1) a written agreement with a client; (2) there must have been a settlement or judgment; (3) there must be nonpayment of the attorney's reasonable fees and costs; and (4) there must have been notice given to any relevant third-parties.[5]

3. A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by Virgin Islands Supreme Court Rule 211.1.5(d)[6], or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the

---

[4] 2023 VI Super 28 at ¶ 46.

[5] *Id.* at ¶ 47.

[6] V.I. Supreme Court Rule 211.1.5(d) of the Virgin Islands Rules of Professional Conduct states:

> A lawyer shall not enter into an arrangement for, charge, or collect:
>
> (1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
>
> (2) a contingent fee for representing a defendant in a criminal case.

percentage or other percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.[7]

4. The 2012 Agreement contained a five percent (5%) contingent fee. This fee was subject to the condition that it would be payable only if Go Fast was awarded damages. The fee and percentage were expressed in writing in a retainer letter from Attorney Fletcher and signed by Paul Sabers.

5. Go Fast was behind tens of thousands of dollars in payment to KFK. KFK and Go Fast entered into another agreement in 2014. KFK secured a one-time lump sum payment of a significant portion of the outstanding billing fees in exchange for waiving some billing fees. This was the 2014 Agreement.

6. The plain language of the 2014 Agreement did not alter the contingent fee from the 2012 Agreement as it was explicitly referenced as the "previously agreed upon" contingent fee. Further, it was explicitly stated that the 2014 Agreement was made "without prejudice" as to this fee.

7. Paul Sabers, acting as agent for Go Fast, did not consent to the modification of the contingent fee from one payable on a damages award at jury trial only to one for a damages award or settlement payment. The requisite "meeting of the minds" to modify the contingent fee from one payable from jury trial damages to one payable from a settlement was lacking.[8]

8. Paul Sabers' email on July 16, 2014, did not modify the 2012 Agreement, but only stated that KFK's further participation in any future award or settlement was limited to the 5% contingent fee, which was only payable upon a damages award. It was not a modification of the already agreed upon contingent fee. Paul Sabers clearly referenced the contingent fee that was made "with Leigh Fletcher" and limits any further participation of KFK to that. Thus, Paul Sabers was indicating that KFK should take no further action, receive no further monies, file no further items, and so forth. Nor is there any language present indicating that he intended to modify, alter, or change the previous agreement.

9. Even if, *arguendo*, Paul Sabers was unilaterally attempting in his July 16, 2014 email to establish a broader contingent fee for KFK other than the one established in the 2012

---

[7] V.I. S. Ct. R. 211.1.5(c).

[8] *Cornelius v. Bank of Nova Scotia*, 67 V.I. 806, 821 (V.I. 2017) ("Further, a contract is only formed or modified to the extent there is mutual assent and mutual consideration.").

Agreement, this new broader fee would have to have been spelled out in writing in a signed agreement. It is not, and therefore any broader contingent fee would be void.

10. As the case was settled without a jury awarding damages, the requisite operant condition for the contingent fee was not been met. KFK is therefore not entitled to any further compensation and the attorney's lien is therefore null.

11. As there was no modification, and at all times Go Fast promptly responded to KFK, the doctrine of laches is inapplicable here.

## IV.   CONCLUSION

¶7      This current matter arises out of a dispute between attorneys over monies obtained by Go Fast in a settlement between Go Fast and Texaco Caribbean, Inc. Go Fast filed suit against Texaco on November 29, 2010, due to oil leakages from storage, distribution, and pumping equipment operated by Texaco at a marina run by Go Fast. The suit was dismissed by the Court on July 11, 2017, as the parties had come to a resolution. Go Fast sought to reopen the case on April 19, 2018, for the limited purpose of adjudicating an attorney's lien, which was leveraged on the settlement by Go Fast's former counsel KFK on July 16, 2014. The case was reopened on May 16, 2018, for the purpose of clarifying the attorney's lien placed by KFK.

¶8      The Court finds that the five percent (5%) contingent fee from the 2012 Agreement, which specified it was only payable if damages were awarded, was not modified or changed by the 2014 Agreement or by Paul Sabers subsequent communication. Therefore, there is no further funds owed to KFK and the attorney's charging lien is null. The Court will henceforth strike the lien.

An order consistent with this Memorandum Opinion follows.

DATED: July 19, 2024

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor  07 / 20 /2024